

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

---

**NO. 2-06-404-CR**

---

SHEILA LANETTE CALHOUN                                          APPELLANT
A/K/A SHEILA L. CALHOUN

V.

THE STATE OF TEXAS                                                    STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

A jury convicted Appellant Sheila Lanette Calhoun of arson, found that she had used or exhibited a deadly weapon during the commission of the offense, and upon her plea of true to the enhancement paragraph, assessed her punishment at twenty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. The trial court sentenced her

---

[1] *See* TEX. R. APP. P. 47.4.

accordingly. In two issues, Appellant contends that the evidence is legally and factually insufficient to support her conviction. Because we hold that the evidence is legally and factually sufficient, we affirm the trial court's judgment.

While Appellant admits that the State's video expert testified that the security tape "showed a person wearing a red ski cap by the clothes which were burned shortly before the initial flash of the fire was observed on the wall" and that "this person . . . is identified as Appellant," she contends that there is no testimony that anyone saw her start the fire and no testimony that she was the person who started the fire, that no evidence connects her with the commission of any part of setting the fire, and that no direct evidence connects her with setting the fire. Appellant challenges only the jury's conclusion that it was she who started the fire; she does not challenge the other elements of arson.

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2]

_____

[2] *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[3] The trier of fact is the sole judge of the weight and credibility of the evidence.[4] Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder.[5] Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict."[6] We must presume that the fact-finder resolved any conflicting inferences in favor of the prosecution and defer to that resolution.[7] The standard of review is the same for direct and circumstantial evidence cases.[8]

---

[3] *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.

[4] *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).

[5] *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000).

[6] *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007).

[7] *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

[8] *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13.

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.[9] We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust.[10] To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict.[11]

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction."[12] We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently

---

[9] *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).

[10] *Watson*, 204 S.W.3d at 414-15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

[11] *Watson*, 204 S.W.3d at 417.

[12] *Id*.

4

than the jury or because we disagree with the jury's resolution of a conflict in the evidence.[13] We may not simply substitute our judgment for the fact-finder's.[14] Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered."[15] Thus, we must give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence."[16]

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal.[17]

Adrian Watterson testified that on February 20, 2006 at around suppertime, he was working as an assistant manager at Dollar General in Fort

---

[13] *Id.*

[14] *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

[15] *Johnson*, 23 S.W.3d at 8.

[16] *Id.* at 9.

[17] *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

Worth, Tarrant County, Texas. Only one other employee was working, and about ten people were shopping. Watterson noticed that an African–American woman, identified later in his testimony as Appellant, purchased a few items, left the store, and came back between fifteen and thirty minutes later. She then began filling her basket and kept watching him and his staff. Watterson alerted his coworker to watch the floor, keep his eyes open, and report if he actually saw something happen. Watterson was not able to watch the woman constantly; she stayed in the store a long time, more than thirty minutes. When he noticed her again, she was walking around the cash register area, which is by the front entrance, her basket was pretty full, and she was constantly looking around. After that, she was ready to check out. Then Watterson heard somebody yell, "Fire!" Watterson saw the top of a flame and a lot of smoke about 100 feet away toward the back of the store but did not see anyone back there. Appellant was in the register line near him at this point. Appellant tried to leave without paying for her basket of items but was later apprehended.[18]

---

[18] *See Calhoun v. State*, No. 02-06-00405-CR, 2008 WL 623664 (Tex. App.—Fort Worth Mar. 6, 2008, no pet. h.) (affirming trial court's judgment in theft case).

When the police searched Appellant after her arrest but before placing her in a squad car, they found a nail. When the investigator for the State retrieved Appellant's clothing from the sheriff's office pursuant to a warrant, he noticed a yellow, flick-type lighter and a single dollar bill. After obtaining a second warrant, he also retrieved that property. The lighter still worked. The clothing included a red or maroon watch or beenie cap, a white Echo Unlimited jersey pullover with short sleeves, a black leather jacket, black wind pants, a pullover sweatshirt, and a pair of pajama bottoms.

After the fire had been extinguished, Nancy Maturino, who worked for Blackmon Mooring Steamatic, went to the store to clean up. Between items of bulk dog food, she found a bottle of charcoal lighter fluid that had been opened. The Tarrant County Medical Examiner's office was unable to develop prints from the bottle's surface.

E.C. Rodriguez, a member of the arson and bomb unit of the Fort Worth Fire Department, testified that he was part of the follow-up investigation team for the fire department. He went to the store to retrieve the bottle of lighter fluid. He estimated that about 1/3 of the liquid had been removed from the 32-ounce bottle before he got it. He also testified that a cigarette lighter can be considered an open flame and that combustible material can be a deadly weapon. He testified that it would take "[p]robably a matter of seconds" for

7

ten ounces of lighter fluid on clothing and lit with an open flame to ignite and that it would result in "not exactly an open explosion like gasoline. It would start in a very slow process, building up, once again, the fumes and growing." It would probably take "a very short period of time" to get to 175 or 180 degrees. He opined that if lighter fluid were squirted over a rack of clothing that was then lit at the bottom, the whole rack would be on fire in a matter of seconds.

Lieutenant Edsil Young of the fire department testified that he observed on the night of the fire that two separate racks of clothing had been burned at the area of origin and that he believed that they were ignited with an open flame. He also testified that there were no nearby electrical connections that could have caused the fire and no lighting strikes, to his knowledge. Finally, he testified that on the security videotape, he saw an individual wearing a red cap leaving the area of origin, and it appeared that she had a white object in one of her hands.

Grant Fredericks, a forensic video analyst testifying for the State, explained that reflection off of objects can pinpoint when a fire starts. He testified that when he analyzed the store's security tape, he observed a dark-skinned, shorter-than-average person walk through the door wearing a red cap, a dark coat with white clothing underneath it, dark pants, light-colored socks,

8

and sandals of some kind. He was able to identify every time that person appeared on any of the camera views; nobody else in the store was dressed that way. He testified that the person was in close proximity to the area of the fire's origin when the reflection started. He testified that there was absolutely no fluctuation or change in the area of the fire's origin before the person was seen back there. He opined that the reflection was caused by the fire and by nothing else. He said that the person was the only one in the area and that the person was holding an object in the person's hand. "The object is primarily light in color[,] [p]robably white. It has a dark top to it." He testified that

> [t]he images of the charcoal lighter fluid bottle [are] completely consistent with that object that's being held. . . . The object shares the same class characteristics, but we can't even say really it's of the same class because there's just not enough information. What I can say is that if we went down to that scene, stood exactly in the same position, under the same lights and held that bottle up, I would expect that it would have the same values and would look the same. Therefore, I can't say it's not that bottle. But I can't go any further than that.

He also testified that the person who entered the store wearing the red ski cap is the same person seen back by the clothes shortly before the flash was observed on the wall. The person's red hat was consistent with Appellant's red hat that had already been admitted into evidence.

Sabino Vasquez, a fire investigator for the Fort Worth Fire Department, testified that he spoke with Appellant the night of the fire and that she was

9

wearing a maroon or reddish hat and long T-shirt and that the hat was consistent with the color of the hat in evidence. He testified that Appellant told him that she did not set the fire. He believed that she had set the fire and had also been involved in setting a fire at a different Dollar General a few months earlier. He was unaware that Appellant was in jail at the time of the earlier fire.

The security video, admitted into evidence as State's Exhibit No. 1, shows the woman in the red cap, baggy pants, short dark jacket, and long white shirt, identified in testimony as Appellant, entering the store and then browsing in the shopping area near the cash register. She later appears in the clothing area; no one else appears in view in that area. She knocks an item of clothing so that it moves slightly. She then moves around the racks in a crouched position, goes out of view, and appears in view again with a white object in her hand as the back wall starts glowing. When flames appear, neither Appellant nor anyone else is in the clothing area as depicted on the video.

The presence of Appellant and no one else in close proximity to the scene of the fire's origin at the time of the reflection or flash, the presence of a white object in her hand that is consistent with a charcoal lighter fluid bottle, the presence of a lighter in her possessions at jail, and the discovery after the fire of the opened charcoal lighter fluid bottle at the store could all lead the jury to

10

conclude beyond a reasonable doubt that it was Appellant who started the fire.

Consequently, based on the standards of review given above, we hold that the evidence is legally and factually sufficient to support Appellant's conviction, overrule her two points, and affirm the trial court's judgment.

PER CURIAM

PANEL F:    DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED: March 27, 2008

11